IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH NELSON,     Petitioner,  v.  UNITED STATES OF AMERICA,     Respondent. | CV 09-0090 AWI  (CR 07-0134 AWI)  ORDER ON PETITIONER'S MOTION TO CORRECT, VACATE OR SET ASIDE THE SENTENCE AND RELATED ORDERS |

    Defendant Keith Nelson ("Nelson") was convicted by plea of guilty to one count of possession of material involving the sexual exploitation of minors in violation of 18 U.S.C. § 2252(a)(4)(B) on November 19, 2007. Judgment was entered on January 14, 2008. Between October 22, 2008, and November 13, 2008, Nelson filed a series of four motions that sought appointment of counsel for preparation of a motion for habeas relief, tolling of the statutory time for filing a habeas petition, and modification of his conditions of confinement pending the outcome of his habeas challenges. On November 14, 2008, the court issued an order denying all outstanding motions and directing Nelson to file a motion pursuant to 28 U.S.C. § 2255 (the "November 14 Order"). On January 12, 2009, Nelson timely filed the instant motion to vacate, correct or set aside his sentence pursuant to 28 U.S.C. § 2255 (the "2255 Motion"). Doc. # 29; Civil Case 09cv090, Doc. # 1. Between December 1, 2008, and January 5, 2009, Nelson filed four separate pleadings the court construes to be motions for reconsideration of its November 14

Order and one motion for issuance of certificate of appealability. For the reasons that follow, the court will deny Nelson's 2255 Motion and will deny all motions for reconsideration and will deny the motion for certificate of appealability.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

At the time of his arrest, Nelson was a 61year old married male who was retired from 21 years of service in the Army and had been employed for a number of years as a machine operator for a marketing company in Merced, California. Nelson's pleadings describe Nelson as suffering from impaired intellect. The Presentence Investigation Report ("PIR") that was prepared for Nelson's sentencing states that Nelson reported having a "learning disability" that made academic achievement difficult. Nelson is reported to have graduated with his high school class in 1963 and functioned competently both in his army career and in his employment in the civilian sector.

According to the PIR, Nelson's name appeared several times on lists generated by the Immigration and Customs Enforcement Cyber Crimes Center in Fairfax, Virginia of persons suspected of having received child pornography via the internet during 2003. On March 5, 2007, Fresno County Sheriff's Department detectives, as well as officers from ICE and Department of Homeland Security went to Nelson's home and conducted and interview. During the interview, Nelson disclosed the existence and location of a large number of electronic data storage devices, including compact disks, floppy discs and computer hard drives that contained more than 600 images of child pornography. During the interview Nelson also admitted knowledge of the existence of the images, his knowledge that they involved depictions of actual children, and his knowledge that possession of such images was unlawful. The investigating agents left after the interview and Nelson was subsequently arrested on June 6, 2007.

On August 13, 2007, Nelson executed a plea agreement, wherein he agreed to plead guilty to a single count of violation of 18 U.S.C. § 2252(a)(4)(B). In the plea agreement, Nelson admitted each of the specific characteristics of the offense that were used to calculate the final

offense level, including allegations that the number of images exceeded 600, a computer was used, that the images included those of prepubescent children engaged in sexually explicit conduct with adults, and that images included some that depicted sadistic or masochistic abuse of young children. The plea agreement also contained an agreement for recommendation of a three-level reduction for acceptance of responsibility and for a recommendation for sentencing at the bottom of the guideline range. The plea agreement stated that the guideline term of imprisonment of 78 months is reasonable under the circumstances and included a comprehensive waiver of the right to appeal or collaterally attack the conviction or the sentence, including waiver of any right to proceed by way of a motion pursuant to 28 U.S.C. § 2255. The plea agreement also acknowledges that, should Nelson be successful in vacating or reduced at his request, the government's reserves the right to prosecute Nelson on any counts of which Nelson was convicted or that were dismissed under the agreement or to prosecute under any charges that were otherwise barred by the plea agreement.

Nelson entered a plea of guilty on November 19, 2007. Judgment was entered on January 14, 2008. The instant 2255 Motion was timely filed on January 12, 2009.

## LEGAL STANDARD

Section 2255 provides, in pertinent part: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States ... may move the court which imposed the sentence to vacate, set aside or correct the sentence." Under section 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, '[u]nless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief.' " United States v. Blaylock, 20 F.3d 1458, 1465 (9th Cir.1994) (quoting 28 U.S.C. § 2255). The court may deny a hearing if the movant's allegations, viewed against the record, fail to state a claim for relief or "are so palpably incredible or patently frivolous as to warrant summary dismissal." United States v. McMullen, 98 F.3d 1155, 1159

(9th Cir.1996) (internal quotations omitted), cert. denied, 520 U.S. 1269, 117 (1997). To earn the right to a hearing, therefore, the movant must make specific factual allegations which, if true, would entitle him to relief. Id. Mere conclusory statements in a section 2255 motion are insufficient to require a hearing. United States v. Hearst, 638 F.2d 1190, 1194 (9th Cir.1980), cert. denied, 451 U.S. 938 (1981).

## DISCUSSION

**I. Nelson's Motion Pursuant to 28 U.S.C. § 2255**

In the plea agreement, Nelson waived his right to collaterally attack his sentence . "The right to attack a judgment collaterally is statutory. [Citation.] A knowing and voluntary waiver of a statutory right is enforceable. [Citation.] For this reason a prisoner may not collaterally attack a judgment if the prisoner waived the right to do so." United States v. Racich, 35 F.Supp.2d 1206, 1210 (S.D. Cal. 1999). However, a waiver cannot bar a claim that relates to the validity of the waiver itself. United States v. Abarca, 985 F.2d 1012, 1014 (9th Cir. 1993). Here, Nelson alleges his plea of guilty was the result of his attorney's failure to fully inform Nelson of the defenses he could have asserted. Specifically, Nelson contends that his consent to search the premises and the incriminating statements he made during the interview were the result of improper police conduct and that had he been sufficiently informed by his attorney of his fourth amendment rights, Nelson would have not entered a plea of guilty. Nelson also contends he suffered ineffective assistance of counsel because his attorney failed to fully inform Nelson of the implications of the plea agreement and that the failure to fully inform was prejudicial due to Nelson's impaired intellect.

Because claims of ineffective assistance of counsel usually implicate the validity of plea agreements that are secured through the efforts of the allegedly ineffective counsel, those claims are not normally considered waived by plea agreements. See United States v. Pruitt, 32 F.3d 431, 433 (9th Cir. 1994) ("We doubt that a plea agreement could waive a claim of ineffective assistance of counsel based on counsel's erroneously unprofessional inducement of the defendant

4

to plead guilty or accept a particular plea bargain"); <u>United States v. Baramdyka</u>, 95 F.3d 840, 844 (9th Cir. 1996) (citing <u>Pruitt</u> for the proposition a general waiver does not include claims of ineffective assistance brought under section 2255).  This court follows <u>Pruitt</u> in finding Petitioner's general waiver of the right to collaterally attack the judgment or his sentence did not waive his right to petition pursuant to section 2255 on the ground of ineffective assistance of counsel.

To establish a constitutional violation for the ineffective assistance of counsel, a defendant must demonstrate (1) a deficient performance by counsel, and (2) prejudice to him. <u>United States v. Cochrane</u>, 985 F.2d 1027, 1030 (9th Cir.1993).  To prove a deficient performance of counsel, Nelson must demonstrate that his attorney "made errors that a reasonably competent attorney acting as a diligent and conscientious advocate would not have made." <u>Butcher v. Marquez</u>, 758 F.2d 373, 376 (9th Cir.1985). To show prejudice, Nelson must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland v. Washington</u>, 466 U.S. 668, 694 (1984).  A court addressing a claim of ineffective assistance of counsel need not address both prongs of the <u>Strickland</u> test if the plaintiff's showing is insufficient as to one prong. <u>Id</u>. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Id.</u>

To be clear, what the court considers when it addresses Nelson's claims of ineffective assistance of counsel is whether the actions of Nelson's attorney were reasonable under the circumstances.  The crux of Nelson's claims regarding ineffective assistance of counsel is that his attorney could have, but did not, inform Nelsons of his right to challenge the legality of the seizure of evidence used against him, or challenge the ability of the government to use statements made by Nelson to investigators without having been first informed of his right to remain silent pursuant to <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).  The fact that Nelson's attorney may have had an opportunity to challenge some element or elements of the government's case does not

determine whether Nelson suffered ineffective assistance of counsel.  If a decision to forego challenge to any element that conceivably could have been challenged is consistent with a reasonable strategic approach to the overall representation, then there is no ineffective assistance of counsel.

In the plea agreement, Nelson agrees to waive rights to appeal and to collaterally attack his sentence, and to plead guilty to a single count of a two-count indictment.  In practical terms, that means Nelson gives up any challenge he might be able to advance with respect to the evidence seized from the search of his home or with respect to any self-incriminating statements he may have made to investigators in the absence of any warning that he was not required to make self-incriminatory statements.  In exchange, Nelson received a 3-level downward departure for the acceptance of responsibility.  In terms of his sentence, the difference afforded by the three-level downward departure is a minimum of thirty months, or roughly a 30% reduction from the minimum sentence of 108 months that would have been indicated had there been no acceptance of responsibility.

The question, then, is whether it was reasonable for Nelson's attorney to recommend that Nelson forfeit the right to challenge the government's ability to use the seized evidence and to challenge the  use Nelson's self-incriminatory statements in order to take advantage of the plea offer.

With respect to the evidence seized by the investigating officers at Nelson's home, when a search that produces evidence is conducted with the consent of the party being searched, the government must be able to show by a preponderance of the evidence that the consent to search was voluntary. United States v. Matlock, 415 U.S. 164, 177 (1974).  "A consent given to search is valid if the consent was freely and voluntarily given and not the result of duress or coercion, expressed or implied.  Whether the consent given to search was freely and voluntarily given is a question of fact to be determined by the totality of the circumstances. [Citation.]" United States v. Betters, 229 F.Supp.2d 1103, 1109 (D. Ore. 2002) (citing Schneckloth v. Bustamonte, 412

U.S. 218, 248-248 (1973).

Nelson alleges the investigating agents gained access to Nelson's home by "trickery." Based on all of Nelson's pleadings, the court concludes that the "trickery" alleged consisted mainly of the investigators insisting that they go inside Nelson's house to interview him and that they did not tell Nelson he could refuse the request. Nelson also alleges that, because of his "feeble intellect," Nelson believed he was under arrest at the time of the interview and did not realize he could have refused the investigators' request for entry and search.

A court looks at a number of factors when assessing the voluntary nature of consent for a search. The more obvious factors include whether the accused was in custody, whether the arresting officers had guns drawn and the length of detention, whether there was repeated or prolonged interrogation and whether there was any physical coercion. Betters, 229 F.Supp.2d at 1109; Schneckloth, 412 U.S. at 226. Other factors for consideration that may be relevant to the present case include the youth of the accused, his lack of education or his low intelligence, or the lack of any advice as to constitutional rights. Schneckloth, 412 U.S. at 226.

When the court examines the totality of the circumstances surrounding the search of Nelson's home, there are no objective indications of undue force or coercion. There is no indication the investigators had their guns drawn or that they threatened Nelson with detention or legal action if he did not acquiesce to the search. While the officers may have been "insistent" about wanting to interview Nelson within his home, there is no indication that there was any threat associated with the insistence, nor did the officers say that they would could get a warrant if Nelson refused. There was no detention and no allegation of hectoring or repeated or prolonged questioning. The account of the interview with the investigating officers in the PIR indicates that Nelson was very forthcoming with information about the location of the images that were eventually seized, event to the point of leading officers to boxes located outside the main house that contained data storage devices that had additional images.

While the accused's subjective knowledge of his right to withhold consent for the search

may be a factor in determining voluntariness, it is not determinative. Id. at 226. An officer conducting a search based on consent of the accused does not bear the constitutional duty to warn the accused of his rights under the Fifth Amendment or to obtain a specific waiver of those rights. Id. at 232-233. The touchstone of voluntariness in the context of a search conducted with the consent of the accused is the absence of cercion. Id. at 233. There is nothing in either Nelson's many pleadings to the court, or in the information available in the PIR to indicate that there was any undue force or coercion.

While Nelson makes much of his alleged "feeble mindedness," the court sees little that would indicate that Nelson suffers from an impairment of intellect that is sufficient to call into question his ability to give consent. Although the record mentions that Nelson had a "learning disability," he did graduate with his high school class and has successfully held a series of responsible positions for long periods of time. Further, the court observes that Nelson, even without the help of jailhouse lawyers, is able to plead his case at a level that is well within the mainstream of the court's experience with pro se pleadings.

The factor that Nelson places most reliance on is his entirely subjective sense that he was under arrest during the interview with the investigators and that he had no choice but to accede to their demand to enter the home. While the accused's subjective feelings are not necessarily irrelevant to the inquiry of voluntariness of consent, courts cannot find a lack of consent based solely on what a defendant reports he thought or felt or knew at the time of the search. See Schneckloth, 412 U.S. at 231 (observing that, if subjective knowledge of the right to refuse permission to search were required to prove consent, the effort to introduce evidence from any search based on consent could be frustrated by an accused simply refusing to testify that he subjectively had such knowledge). Where, as here, there are no objective factors indicating there was any coercion, the court cannot find a lack of consent base solely on the accused's subjective feeling that he was not empowered to refuse the search.

The court concludes that Nelson has failed to show facts sufficient to support his

8

underlying contention that the search of his home on March 5, 2007, was without his consent. Because Nelson has not adduced or alleged facts sufficient to show that his home was searched without his consent, the court finds that Nelson's allegation of ineffective assistance of counsel with respect to his attorney's failure to inform Nelson of his Fifth Amendment rights or to directly challenge the evidence is without merit.

With regard to the incriminating statements made by Nelson during the investigation, Nelson contends he suffered ineffective assistance of counsel where his attorney failed to challenge the incriminating statements because he was not advised as to his right against self incrimination as required by Miranda. "An officer's obligation to administer Miranda warnings attaches, however, 'only when there has been such a restriction on a person's freedom as to render him "in custody."'  [Citation.]" Stansbury v. California, 511 U.S. 318, 322 (1994).  In determining whether a person is in custody for purposes of Miranda, "the initial determination of custody depends on the objective circumstances of the interrogation, not the subjective views harbored by either the interrogating officers or by the person being questioned. Id. at 323. Whether the person being questioned subjectively believes he is under arrest or whether the investigating officer believes that the person being questions will ultimately be arrested is not determinative of when the duty to give the Miranda warnings attaches.  That duty only attaches when the restriction on the liberty of the person being questioned is such that the person can be said to be in custody. Id. at 324-325.

Notwithstanding that Nelson alleges he thought he was in custody at the time he made incriminating statements, there is absolutely no objective indication that he was, in fact, in custody.  There is no allegation, for example, that Nelson was removed from his home for questioning, that he was placed in any form of restraint, that he was told he was under arrest, or that the questioning was protracted or repetitive.  What the information before the court indicates is that the investigating agents came to Nelson's residence on March 5, 2007, conducted an interview, seized data storage devices that were pointed out by Nelson, and left.  Nelson was not

9

arrested until three months later.  Based on all the information gleaned from all of Nelson's pleadings and from the PIR, there is no basis upon which the court could possibly find that Nelson was entitled to warnings against self-incrimination pursuant to <u>Miranda</u> prior to talking to the investigating agents on March 5, 2007.

Nelson also alleges in his 2255 Motion that he suffered ineffective assistance of counsel when his attorney failed to assert "salient factors" in the computation of his sentence including Nelson's advanced age, "feeble mindedness" and poor health.  Nelson's allegations in this regard are simply contrary to fact.  The PIR contains a review of Nelson's health problems, sets forth his age, and reviews his psychological evaluation to the extent it bears on sentencing.  Those factors were taken into account to the extent permitted by law and agreed upon by the parties.  There is no evidence that Nelson's attorney or the court improperly ignored any salient factor in his sentencing.

Nelson also contends he was denied effective assistance of counsel because he was not fully informed of his right to depose witnesses on confront witnesses for the government.  What Nelson fails to allege is how the exercise of any of those rights might possibly have had an impact on the outcome of his case.  An attorney has no duty to pursue a particular defense or exercise a defensive right where there is no reasonable benefit to be realized from such advocacy. <u>See</u> <u>Lowery v. Lewis</u>, 21 F.3d 344346 (9th Cir. 1994) ("A lawyer's zeal on behalf of his client does not require him to file a motion which he knows to be meritless on the facts and the law").  The fact that one or more defensive procedures or strategies went unused in a particular case does not give rise to an appealable issue without some demonstration that the outcome would likely have been different had the defensive procedure been used.  The mere assertion that a particular defensive procedure, such as the deposition of a certain person, might have been beneficial in some abstract sense is not sufficient.

Nelson's attorney faced a situation where there was abundant evidence of the charged offense and essentially no legal basis to mount an effective challenge to that evidence.  As

discussed above, there was essentially no probability that Nelson's lawyer could have successfully moved to exclude the evidence contained on the data storage devices that were seized during the investigators' interview on March 5, 2007.  Likewise, there is no possibility at all that Nelson's attorney could successfully have moved to exclude from evidence the inculpatory statements made by Nelson during that interview.  There is, in sum, no evidence of any omission or oversight on the part of Nelson's attorney that would possibly have produced a more favorable result had the omission or oversight not been made.  In short, the court can find no basis at all for Nelson's claim of ineffective assistance of counsel.

**II. Motions for Reconsideration and for Certificate of Appealability**

Nelson's prior pleadings to the court have largely been for the purpose of requesting the appointment of an attorney for the purpose of preparing a collateral attack on his sentence.  The court denied those motions and, to the extent there are motions for reconsideration outstanding, the court must deny those as well.  To justify reconsideration, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision.  See, e.g., Kern-Tulare Water Dist. v. City of Bakersfield, 634 F.Supp. 656, 665 (E.D.Cal. 1986), *aff'd in part and rev'd in part on other grounds*, 828 F.2d 514 (9th Cir. 1987).  When filing a motion for reconsideration,  Local Rule 78-230(k) requires a party to show the "new or different facts or circumstances claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion."  The court has thoroughly reviewed all of Nelson's pleadings and the arguments contained therein and has come to the conclusion there is, as discussed above, no basis for any of Nelson's claims of error or prosecutorial misconduct or ineffective assistance of counsel.  Reconsideration will therefore be denied.

Nelson has also requested the court issue a "certificate of probable cause."  The grounds raised by Nelson in support of his request are exactly those addressed by the instant memorandum opinion and order.  That is, Nelson alleges ineffective assistance of counsel based on his contentions that he was not thoroughly informed by his counsel of his rights under the

Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments and was therefore prevented from asserting defenses to which he was entitled.

Because Nelson is procedurally barred from a direct appeal, the court construes Nelson's request as a request for certificate of appealability for the purpose of appeal of this denial of the instant habeas petition. The Supreme Court has found that the Court should issue a certificate of appealability when the petitioner shows that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. Slack v. McDaniel, 120 S.Ct. 1595, 1603 (2000). The requirement that the petitioner seek a certificate of appealability is a gatekeeping mechanism that protects the Court of Appeals from having to devote resources to frivolous issues while at the same time affording petitioners an opportunity to persuade the Court that through full briefing and argument the potential merit of claims may appear. Lambright v. Stewart, 220 F.3d 1022, 1025 (9th Cir. 2000). The Supreme Court has found that the even the application of an apparently controlling Ninth Circuit rule can be debatable if it conflicts with the rules of another circuit or there is reasonable argument of why the Ninth Circuit should reconsider the Ninth circuit rule. See id.

In the present case, the court finds that Nelson has not made the required substantial showing of the denial of a constitutional right to justify the issuance of a certificate of appealability. Reasonable jurists would not debate that Nelson has not shown how he is entitled to federal habeas corpus relief. Accordingly, the court will order that Nelson's request for a certificate of appealability be denied.

**III. Claims Regarding Conditions of Confinement**

Nelson has alleged additional claims relating to his treatment while in confinement. Specifically, he alleges guards at Victorville Correctional Facility disclosed his offense to the general population which put Nelson's life and well-being in jeopardy. Nelson claims he has been threatened with personal harm and has been housed in solitary confinement to prevent harm

to him.  Nelson is hereby advised that the court cannot address his claims with respect to his conditions of confinement by way of a motion pursuant to 28 U.S.C. § 2255.  To address issues of conditions of confinement, Nelson may file a motion pursuant to 28 U.S.C. § 2241 in the district court of the district where he is housed.  Nelson is further advised that such claims are only cognizable if administrative remedies have been exhausted.

THEREFORE, in accord with the foregoing discussion, it is hereby ordered that:

1. Nelson's motion to amend, vacate or set aside the sentence pursuant to 28 U.S.C. § 2255 as set forth in Document # 29 is DENIED.
2. Nelson's motion for certificate of probable cause, herein construed as a motion for certificate of appealability pursuant to 28 U.S.C. § 2253(c), as set forth in Document # 28 is DENIED.
3. Nelson's motion for reconsideration of the November 14 Order as set forth in Document # 30, and his pleading titled "Last Plea to the Court," as set forth in Document # 31 are both DENIED
4. To the extent Nelson has asserted claims relating to his conditions of confinement, those claims are DENIED as discussed above.
5. The Clerk of the Court shall CLOSE Case # 09cv0090 AWI.

IT IS SO ORDERED.

Dated:     February 11, 2009                    /s/ Anthony W. Ishii
                                            CHIEF UNITED STATES DISTRICT JUDGE